IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION


EUGENIA CAMPBELL and DEMETRIUS CAMPBELL                    PLAINTIFFS

VS                                    CIVIL ACTION NO. 4:14-CV-069-DMB-JMV

CITY OF INDIANOLA, MAYOR STEVE ROSENTHAL,
IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, CHIEF RICHARD
O'BANNON, IN HIS INDIVIDUAL AND OFFICIAL
CAPACITY, and OFFICER SCOTT HAGERMAN, IN HIS
INDIVIDUAL AND OFFICIAL CAPACITY                              DEFENDANTS

## MEMORANDUM OF AUTHORITIES

**COME NOW**, Defendants, City of Indianola, Mayor Steve Rosenthal, in His Individual and

Official Capacity, Chief Richard O'Bannon, in His Individual and Official Capacity, and Scott

Hagerman, in His Individual and Official Capacity, by and through counsel, and respectfully tender

this their Memorandum of Authorities in support of summary judgment in accordance with *Uniform*

*Local Rule* 7.2 and *Fed. R. Civ. Proc.* 56, to wit:

I.    **PREMISE**

Plaintiff Demetrius Campbell's constitutional claims are barred from moving forward

because he invoked a state judicial proceeding which satisfies each of the requisite elements

necessary to bar the instant claim under the doctrine of collateral estoppel.  The issue of whether or

not excessive force was used by Officer Hagerman against either Plaintiff, Eugenia or Demetrius,

has already been litigated in the Circuit Court of Sunflower County, Mississippi, through the taking

of live sworn testimony before a finder of fact.  Theses claims cannot now be re-litigated in a new

federal venue.  Demetrius's excessive force claims are barred by Heck.  Substantively, Plaintiffs

1

have failed to establish any deficient training or supervision issues, and the City cannot be held liable based upon respondeat superior. The instant case is ripe for summary judgment.

## II.    BACKGROUND

On July 23, 2013, IPD Officer Scott Hagerman responded to a report of an automobile collision at the intersection of Garrard Road and Wiggins Road.[1]  Plaintiff Demetrius Campbell, who was not involved in the accident, appeared on the scene and refused to obey Officer Hagerman's orders to stand back.  Officer Hagerman claims Demetrius was actively interfering with his investigation, began to threaten physical harm to Hagerman, and made deliberate shoulder-to-shoulder contact with him.  Officer Hagerman eventually arrested Demetrius after struggling with him and a brief foot chase.  Hagerman held Demetrius in an immobilized position until backup arrived.  Demetrius claims excessive force was used in the arrest.  Eugenia claims Officer Hagerman pushed her down, causing injury.  Demetrius was charged with resisting arrest, failure to obey an officer and on an outstanding warrant for trespassing.[2]  He was found guilty in Indianola Municipal Court on April 14, 2014.[3]

On the same day as his arrest, Demetrius Campbell filed an Affidavit in Sunflower County Justice Court against Officer Hagerman on a charge of simple assault.[4]  A probable cause hearing was held less than three months later, on November 4, 2013, at which time Sunflower County Circuit

---

[1]Exhibit A - Indianola Police Department Incident Report - Hagerman Narrative.

[2]Exhibit B - Indianola Police Department Arrest Report for Trespassing.

[3]Exhibit C - Indianola Municipal Court Abstract of Court Record for Demetrius Campbell.

[4]Exhibit D - Sunflower County Justice Court Affidavit of Demetrius Campbell against Hagerman, 7/23/13.

Court Judge Richard A. Smith took live sworn testimony of witnesses and gathered evidence. The sworn testimony is as follows:

### A. Demetrius Campbell

Demetrius testified he arrived at the scene and walked around to the back of the truck to see what kind of damage his grandmother's vehicle sustained. Demetrius talked to his grandmother, and she said she was okay.[5] Demetrius then testified that Officer Hagerman stopped Demetrius at the scene, asked who he was, and then put his hands on Demetrius's chest and pushed him to the back of the vehicle away from it.[6] Demetrius Campbell admits he did not move when the officer told him to move.[7] Demetrius also admits he checked on his grandmother and she had already told him that she was okay.[8] Demetrius admits Officer Hagerman was trying to clear the scene.[9] Demetrius had no indication that his grandmother was injured other than she had been in an accident. He confirmed there were no ambulances, fire trucks, doctors, or nurses, at the scene.[10] All parties agree that Demetrius was not in handcuffs during the time he claims Officer Hagerman assaulted him.

### B. Eugenia Campbell

Demetrius's grandmother, Eugenia Campbell, also testified at the PC hearing. She stated that

---

[5]Exhibit E - Probable Cause Hearing Transcript, P10, L10-19.

[6]Exhibit E - Probable Cause Hearing Transcript, P10, L22-29.

[7]Exhibit E - Probable Cause Hearing Transcript, P11, L23-29; P12, L1-5.

[8]Exhibit E - Probable Cause Hearing Transcript, P12, L6-8.

[9]Exhibit E - Probable Cause Hearing Transcript, P13, L22-23.

[10]Exhibit E - Probable Cause Hearing Transcript, P13, L2-13.

3

she was in the wreck, that Officer Hagerman was dispatched, and had told her she was free to go.[11]

Demetrius and a friend arrived in a vehicle which was blocking traffic, and Hagerman asked

Demetrius and his friend to "get the car out of my investigation."[12]  Eugenia testified that Demetrius

got out of the car and approached her while Officer Hagerman continued to ask "Who are you?" and

"get out of my investigation" and "move around".[13]  Eugenia then testifies Hagerman began to choke

Demetrius.  She admits she proceeded to move in front of Officer Hagerman and Demetrius against

the truck in an effort to split them up.[14]  During the course of her efforts to interfere with the arrest

of Demetrius, she testified she was shoved down by Officer Hagerman and injured along the side

of her truck.[15]

### C.    Scott Hagerman

Officer Hagerman testified that while he was working the accident, he found out that

Demetrius had an active warrant.[16]  When Hagerman asked Demetrius to move around the vehicles

and get back up on the sidewalk, Demetrius refused, shoulder-butted the officer, and said, "I don't

have to tell you shit, that's my grandma."[17]  Hagerman placed him in a pressure point technique to

---

[11]Exhibit E - Probable Cause Hearing Transcript, P3, L11-14.

[12]Exhibit E - Probable Cause Hearing Transcript, P3, L14-18.

[13]Exhibit E - Probable Cause Hearing Transcript, P3, L19-25; P4, L1-4.

[14]Exhibit E - Probable Cause Hearing Transcript, P4, L10-15; L16-17: "I just moved to try to get between them, move in between them."; P6, L16-18: "I wasn't trying to break it up.  I was just trying to get between them, you know, because there wasn't nothing I could do."

[15]Exhibit E - Probable Cause Hearing Transcript, P4, L12-15, L19-22; P5, L16-18.

[16]Exhibit E - Probable Cause Hearing Transcript, P14, L23-28.

[17]Exhibit E - Probable Cause Hearing Transcript, P15, L13-21.

restrain Campbell, a restraint he was trained to do at the Academy.[18] Hagerman testified that while he was holding Demetrius and telling him to calm down, Eugenia came up and tried to get between them. She grabbed Hagerman's arm, trying to pull him off of Demetrius.[19] Euegenia was successful, and Demetrius fled at which point Hagerman initiated a foot pursuit and was able to catch Campbell several feet down the street. Hagerman then took Campbell to the ground while waiting for backup to arrive.[20]

After a presentation of evidence and witnesses, Sunflower County Circuit Court Judge Richard Smith did not find sufficient probable cause for a warrant to be issued against Scott Hagerman for simple assault.[21]

Further, photos taken by a gathering crowd at the scene reveal that Officer Hagerman, while restraining the non-compliant suspect and waiting on backup to arrive, did not engage in excessive force.[22] This claim is ripe for judgment as a matter of law.

## III.    SUMMARY JUDGMENT STANDARD

Defendants invoke the controlling standard for consideration of summary judgment under Rule 56, *Fed. R. Civ. Proc.*; (*See* Also: Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 91

---

[18]Exhibit E - Probable Cause Hearing Transcript, P15, L23-29.

[19]Exhibit E - Probable Cause Hearing Transcript, P16, L1-7.

[20]Exhibit E - Probable Cause Hearing Transcript, P16, L8-13.

[21]Exhibit F - Order of Circuit Court of Sunflower County, Cause No. 2013-0054, 11/25/2013.

[22]Exhibit G - Photographs.

L. Ed. 2d 202 (1986); Impossible Elec. Tech. v. Wackenhut Protection Systems, 669 F.2d 1026,

1031 (5th Cir. 1982); Environmental Defense Fund v. Marsh, 651 F.2d 983, 991 (5th Cir. 1981);

and, Southern Distributing Co. v. Southdown, Inc., 574 F.2d 824, 826 (5th Cir. 1978)).

An interesting thing happens to the standard summary judgment analysis when there is

photographic evidence present.  Although appellate courts still review evidence in the light most

favorable to the nonmoving party, the United States Supreme Court has modified the standard

analysis to assign greater weight, even at the summary judgment stage, to the facts evident from

video recordings or photographs taken at the scene.  Scott v. Harris, 550 U.S. 372, 127 S. Ct. 1769,

167 L. Ed. 2d 686 (2007).  In Scott, the plaintiff, who was the fleeing suspect, contended that the

police were culpable by employing a maneuver to stop his speeding automobile, knowing that it

would cause serious injury to him.  On the other hand, the suspect in Scott was clearly depicted on

video endangering innocent citizens and other officers with his reckless driving.  In short, this Court

need not rely on the plaintiff's description of the facts where the record discredits that description

but should instead consider the facts in light of photos or other documentary evidence.  Id. at 381.[23]

## IV.    ARGUMENT AND AUTHORITIES

### A.    Collateral Estoppel Effect of Probable Cause Determination.

#### 1.    Definition and history

---

[23]See also Foster v. Carroll County, 502 Fed. Appx. 356, 358 (5th Cir. Miss. 2012)(The prisoner argued that his excessive force claim should have proceeded to a jury because he did not have a pellet gun in his hands when the deputy shot him in the leg. A videotape of the situation was partially obstructed and did not show his hands in the moments immediately preceding and following the shooting. However, the audio and visual portions of the videotape of the incident demonstrated that the prisoner's version of the events was a visible fiction. Viewing the videotape of the deputy's actions from the perspective of a reasonable officer, the district court correctly concluded that the deputy's actions were objectively reasonable under the circumstances.).

"The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to give the same preclusive effect to state court judgments that those judgments would receive in the courts of the state from which the judgments emerged." Raju v. Rhodes, 7 F.3d 1210, 1214 (5th Cir. 1993). "[C]ollateral estoppel relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." Allen v. McCurry, 449 U.S. 90, 94, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980) (citing Montana v. United States, 440 U.S. 147, 153-54, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979)).

Also known as "issue preclusion", collateral estoppel "applies to prevent issues of ultimate fact from being re-litigated between the same parties in a future lawsuit if those issues have once been determined by a valid and final judgment." Vines v. Univ. of Louisiana at Monroe, 398 F.3d 700, 705 (5th Cir. 2005) (citing Ashe v. Swenson, 397 U.S. 436, 443, 90 S. Ct. 1189, 25 L. Ed.2d 469 (1970); Restatement (Second) of Judgments § 27 (1982)). "[A] right, question, or fact distinctly put in issue and directly determined as a ground of recovery by a court of competent jurisdiction collaterally estops a party or his privy from relitigating the issue in a subsequent action." Freeman v. Lester Coggins Trucking, Inc., 771 F.2d 860, 862 (5th Cir. 1985) (quoting Hardy v. Johns-Manville Sales Corp., 681 F.2d 334, 338 (5th Cir.1982)).

### 2. Three-part test for collateral estoppel is satisfied

Under federal law, there are three prerequisites to the application of collateral estoppel: (1) that the issue at stake be identical to the one involved in the prior litigation; (2) that the issue has been actually litigated in the prior litigation; and (3) that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action. Pace v. Bogalusa City Sch. Bd., 403 F.3d 272, 290 (5th Cir. 2005). In addition to these three factors, the

court must also determine that there is no special circumstance that would make it unfair to apply the doctrine of collateral estoppel. <u>Winters v. Diamond Shamrock Chem. Co.</u>, 149 F.3d 387, 391 (5th Cir. 1998) (internal citations omitted).

Every section of the three-part test is met here. (1) Campbell's federal claim that he was subject to an unprovoked assault is identical to Campbell's claim at the probable cause hearing;[24] (2) this issue was litigated during the probable cause hearing, where the circuit court heard sworn live testimony from the Plaintiff, the Defendant, and witnesses for both Plaintiff and Defense; (3) it was determined in the prior litigation (the PC hearing) that no probable cause existed to go forward with any claims of assault against Officer Hagerman. In addition, Campbell has put forth no special circumstance that would make it unfair to apply the doctrine of collateral estoppel in this case. In short, Campbell is asking this Court to re-litigate the same issue that has been previously heard and adjudicated in the Circuit Court of Sunflower County before Judge Richard Smith.

3. <u>Precedent of binding effect of state court judgments in a federal forum</u>

This issue of the binding effect of a state court judgment in a federal forum is nothing new. For example, in <u>Holmes v. Jones</u>, the Fifth Circuit affirmed the district court's dismissal of an elementary school principal's § 1983 suit against the school board based on collateral estoppel. 738 F.2d 711 (5th Cir. 1984). In <u>Holmes</u>, the school board decided not to rehire the principal, and the principal pursued judicial review in chancery court and the Mississippi Supreme Court, both of which affirmed the school board. The district court found, and the Fifth Circuit agreed, that the issues presented to the chancery court, including allegations of due process violations and denial of constitutional rights, were "substantially identical" to the issues raised in federal court. <u>Id.</u> at 714.

---

[24]Exhibit H - Complaint, P8.

Accordingly, the principal was "collaterally estopped to litigate the issues presented in [his] federal action." Id.; see also Lewis v. E. Feliciana Parish Sch. Bd., 820 F.2d 143 (5th Cir. 1987) (affirming summary judgment based on collateral estoppel of dismissed teacher's §1983 action alleging violation of due process rights).

In Haring v Prosise, the United States Supreme Court observed that an exception "to collateral estoppel *may* be warranted in §1983 actions in light of the 'understanding of §1983' that 'the federal courts could step in where the state courts were unable or unwilling to protect federal rights.'" 462 U.S. 306, 313-14, 103 S. Ct. 2368, 76 L. Ed. 2d 595 (1983) (emphasis added) (quoting Allen v. McCurry, 449 U.S. 90, 101 (1980)). However, the Court in Allen explained that such concerns were appropriately addressed by the criteria necessary for the application of collateral estoppel (the three-part test as outlined above).

This understanding of §1983 might well support an exception to collateral estoppel where state law did not provide fair procedures for the litigation of constitutional claims, or where a state court failed to even acknowledge the existence of the constitutional principle on which a litigant based his claim. Such an exception, however, would be essentially the same as the important general limit on rules of preclusion that already exists: Collateral estoppel does not apply where the party against whom an earlier court decision is asserted did not have a *full and fair opportunity* to litigate the claim or issue decided by the first court. But the U.S. Supreme Court's view of §1983 lends no strength to any argument that Congress intended to allow re-litigation of federal issues decided after a full and fair hearing in a state court simply because the state court's decision may have been erroneous (or unfavorable). See R.B. v. Hinds County Sch. Dist., 2009 U.S. Dist. LEXIS 113322 (S.D. Miss. Dec. 4, 2009)(citing Monroe v. Pape, 365 U.S. 167, 81 S. Ct. 473, 5 L. Ed. 2d 492

9

(1961)).

Demetrius Campbell has set forth no facts suggesting that he was denied a full and fair opportunity to litigate the due process issues in circuit court.  While he disagrees with the ruling of Judge Smith, that does not provide the basis for federal review. Instead, it is forum shopping. Accordingly, summary judgment on the Demetrius's excessive force claim is appropriate based on collateral estoppel principles.  It has already been litigated.

**B.**    **Heck v. Humphrey bars Demetrius's excessive force claim.**

It is well settled under Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994) that when a Plaintiff like Demetrius brings a §1983 claim against the arresting officers "the District Court must first consider whether a judgment in favor of the Plaintiff would necessarily imply the invalidity of his conviction or sentence." Conners v. Graves, 538 F.3d 373, 376 (5th Cir. 2008)(citations omitted).  To prevail on his §1983 claim for damages arising out of the alleged excessive use of force, Demetrius must prove that Hagerman's use of force was objectively unreasonable under the circumstances.  Conners, 538 F.3d at 377 (citing Graham v. Conner, 490 U.S. 386, 395-97, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).

To establish liability, Demetrius must allege 1) an injury, 2) which resulted directly and only from use of force that was *clearly excessive* to the need, and 3) the excessiveness of which was *objectively unreasonable*.  Bazan v. Hidalgo County, 246 F.3d 481, 488 (5th Cir. 2001).

Here, the excessive force claim under §1983 and Demetrius's conviction for (1) failure to obey an officer, and (2) resisting arrest arise out of the same factual basis.  This is barred under Heck. Liability cannot be assigned to Officer Hagerman without impugning Demetrius's convictions of failure to obey and resisting arrest.  If the Court were to hold that Hagerman's use of force was

excessive, it would imply that Campbell did not attempt to resist or fail to obey even though he admits it at the probable cause hearing (see record cites above) and was convicted of these violations in Municipal Court after Judge Alsee McDaniel took sworn testimony. There is no dividing line between Demetrius's resisting arrest, failure to obey, and Hagerman's use of force.

Further, there is no evidence that Demetrius's conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. Ballard v. Burton, 444 F.3d 391, 396 (5th Cir. 2006). Heck bars this claim from proceeding. This §1983 claim is precluded by Heck's "favorable termination rule" when a judgment in favor of Demetrius would necessarily imply the invalidity of his conviction or sentence. Ballard at 401. The conviction has been upheld. All of Demetrius's constitutional claims are barred as a matter of law.

### C.   Officer Hagerman is entitled to qualified immunity.

#### 1. Officer Hagerman's warrantless arrest of Demetrius does not violate the Fourth Amendment because probable cause existed to arrest.

Law enforcement officials, "like other public officials acting within the scope of their official duties, are shielded from claims of civil liability, including § 1983 claims, by qualified immunity." Morris v. Dillard Dep't Stores, Inc., 277 F.3d 743, 753 (5th Cir. 2001). Qualified immunity is a shield from individual liability for "'government officials performing discretionary functions . . . as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" Good v. Curtis, 601 F.3d 393, 400 (5th Cir. 2010) (quoting Anderson v. Creighton, 483 U.S. 635, 638, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). "[Q]ualified immunity generally protects 'all but the plainly incompetent or those who knowingly violate the law.'" Id.

11

(quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)).

When a defendant asserts qualified immunity, the plaintiff has the burden to rebut the defense. Hampton v. Oktibbeha Cnty. Sheriff Dep't., 480 F.3d 358, 363 (5th Cir. 2007). In determining whether qualified immunity exists in the summary judgment posture, the Court "looks to the evidence before it (in the light most favorable to the plaintiff) . . . ." McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (quoting Behrens v. Pelletier, 516 U.S. 299, 309, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996)).

The Fourth Amendment to the United States Constitution provides that citizens have the right to be free from arrest without probable cause. Mangieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir. 1994). "A warrantless arrest violates a suspect's Fourth and Fourteenth Amendment rights if the arresting officer lacks probable cause to believe that the suspect has committed a crime." Bodzin v. City of Dallas, 768 F.2d 722, 724 (5th Cir. 1985). Whether an arresting officer had probable cause depends on whether, at the time of the arrest, the facts and circumstances within the officer's knowledge would support a reasonable person's belief that the arrested individual had committed or was committing an offense. Beck v. Ohio, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964); Hart v. O'Brien, 127 F.3d 424, 444 (5th Cir. 1997).

Here, Demetrius admitted he did not follow Hagerman's commands. He was convicted of resisting arrest and failure to obey an officer. Probable cause existed to arrest. There is no Fourth Amendment violation here.

> **2. Officer Hagerman did not use excessive force against Eugenia or Demetrius.**

"To state a violation of the Fourth Amendment prohibition on excessive force, the plaintiff

must allege: (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force that was objectively unreasonable." Bush v. Strain, 513 F.3d 492, 500-01 (5th Cir. 2008). The relevant inquiry is whether the force used by the defendant was clearly excessive or clearly unreasonable and whether the totality of the circumstances justified the particular use of force. "Specifically, the court should consider 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Bush, 513 F.3d at 501 (quoting Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). If the officer's actions are objectively reasonable in light of the facts and circumstances confronting him, without regard to underlying intent or motivation, then he is entitled to qualified immunity. Ramirez v. Knoulton, 542 F.3d 124, 128-29 (5th Cir. 2008).

In the recent case of Martin v. Chandler, 2012 U.S. Dist. LEXIS 11758 (N.D. Miss 2012), Officer Dewayne Chandler of the Verona Police Department instigated a traffic stop after witnessing a vehicle run two stop signs. Once the driver noticed Chandler's blue lights, the vehicle pulled over in front of the Precious Hands Daycare Center, owned by Dorothy Heard. While Officer Chandler was radioing in his position and calling his partner on his cell phone for back up, Heard came out of the daycare and approached the patrol car's driver's side window. Heard asked Chandler to take the traffic stop elsewhere because she did not believe a child care center to be the proper place for a traffic stop. Chandler told Heard to get back inside the daycare because she was interfering with his traffic stop. Heard returned to the daycare center. Heard's daughter, Qushawina Martin, also approached Officer Chandler, who told her to get back inside the daycare. Once Chandler's partner arrived on the scene, the officers removed a quart beer bottle and a steak knife and placed those

13

items on the trunk of the vehicle. Heard went back out to the site of the traffic stop to let the officers know she did not want alcohol or weapons on the premises of her daycare center. The officers again asked Heard to please stay inside the daycare center. While the officers were attending to the traffic stop, Martin was taking pictures on her cell phone of the scene. Chandler approached the daycare center. Heard yelled something at him from the doorway, and Chandler grabbed and twisted Heard's arm in an attempt to effectuate an arrest for disorderly conduct and interfering with a traffic stop. During his attempt to arrest Heard, Qushawina Martin's one year old son, Channing, was standing beside Heard and fell hitting his head. Id. at *3.

To prevail on a theory of violation of Fourth Amendment excessive force, the Plaintiffs must produce evidence that the officer's acts were both intentional and unreasonable. Graham v. Connor, 490 U.S. at 596-97, 109 S. Ct. 1378. Negligent or accidental conduct by police officers does not rise to the level of a constitutional violation. Brower v. County of Inyo, 489 U.S. 593, 596, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989). Judge Sharion Aycock, in writing the opinion, found no Fourth Amendment violation. There was no evidence from which to infer that Officer Chandler intended to exercise any force against one- year old Channing Martin, or that, even if it was Chandler's fault the child fell, Chandler's actions were intentional. Martin at *11. Judge Aycock further found that Chandler's grabbing the daycare owner's arm in his attempt to place handcuffs on her was reasonable. Summary judgment was affirmed.

The same methodology applies to Eugenia's claims against Officer Hagerman. She admits she tried to "get between" Officer Hagerman and her grandson Demetrius.[25] During the process (of

---

[25]Exhibit E - Probable Cause Hearing Transcript, P4, L10-15; L16-17: "I just moved to try to get between them, move in between them."; P6, L16-18: "I wasn't trying to break it up. I was just trying to get between them, you know, because there wasn't nothing I could do."

interfering with the arrest), Eugenia fell and hit her head. There is absolutely zero evidence that Officer Hagerman injured her intentionally. Summary judgment is proper as to Eugenia's personal injury claim.

As for the excessive force claim by Demetrius against Officer Hagerman, again, Demetrius was actively resisting arrest, fled from Officer Hagerman, and was arrested and convicted for it. (See thorough discussion above). Officer Hagerman's actions were objectively reasonable in light of Judge Aycock's opinion in Martin v. Chandler.

### D. Plaintiffs' Supervisory Claims Against Indianola and Chief O'Bannon Fail as a Matter of Law.

#### 1. No *respondeat superior* under Monell.

A municipality is a "person" subject to suit under §1983. See Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). A local government entity may be sued "if it is alleged to have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" City of St. Louis v. Praprotnik, 485 U.S. 112, 121, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988) (quoting Monell, 436 U.S. at 690, 98 S. Ct. 2018). Alternatively, municipal liability may attach where the constitutional deprivation is pursuant to a governmental custom, even if such custom has not received formal approval. Monell, 436 U.S. at 690-91, 98 S. Ct. 2018.

The elements of the Monell test exist to prevent a collapse of the municipal liability inquiry into a *respondeat superior* analysis. See Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 415, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). A municipality may not be subject to liability merely for employing a tortfeasor. See, e.g., City of Canton, Ohio v. Harris, 489 U.S. 378,

392, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). Municipal liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation. Id. at 391-92, 109 S. Ct. 1197. Plaintiffs fail to identify any such action on behalf of Indianola.

### 2.     City Liability – No Identification of Policymaker.

"The first requirement for imposing municipal liability is proof that an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of the municipality." Zarnow v. City of Witchita Falls, Tex., 614 F.3d 161, 167 (5th Cir. 2010) (citing Cox v. City of Dallas, Tex., 430 F.3d 734, 748-49 (5th Cir. 2005) (emphasis added)). A policymaker is "one who takes the place of the governing body in a designated area of city administration." Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984) (en banc). He or she must "decide the goals for a particular city function and devise the means of achieving those goals." Bennett v. City of Slidell, 728 F.2d 762, 769 (5th Cir. 1984) (en banc).

In this case, Plaintiffs name Mayor Steve Rosenthal as a defendant in the Complaint, but fail to identify how, if at all, Mayor Rosenthal is a policymaker for the City of Indianola or the Indianola Police Department. The mayor was not present on the date of the incident. The mayor has no direct supervisory control over patrol officers, nor any responsibilities with regard to training or certification of officers.[26]

Plaintiffs also name Chief O'Bannon of the Indianola Police Department as a defendant for also failing to argue that he is a policymaker. A chief of police does not make policy. In Henderson v. Garnett, 2012 U.S. Dist. LEXIS 118470, 11-12 (N.D. Miss. Aug. 22, 2012), Plaintiff Henderson brought a §1983 claim against Starkville police chief David Lindley. Chief Judge Aycock, in her

---

[26]Exhibit I - Affidavit of Steven Rosenthal.

opinion dismissing the claim, found that as Police Chief, Lindley's actions do constitute City policy. See Taylor v. Town of DeKalb, Miss, Civ. Action No. 4:06cv124STL-LRA, 2009 U.S. Dist. LEXIS 51743, 2009 WL 174823, 4 (S. D. Miss. June 19, 2009) (citations omitted). The Henderson opinion found that since Plaintiff made no allegation that Chief Lindley was in any way *personally involved* in Henderson's arrest or prosecution for robbery and kidnapping, his actions cannot constitute a policy under which to attach municipal liability. See Kohler v. Englade, 470 F.3d 1104, 1115 (5th Cir. 2006) (finding that a plaintiff suing police chief must show his *personal involvement* in the constitutional violation or a sufficient causal connection between his conduct and the violation). Henderson failed to demonstrate that a municipal policy led to any constitutional deprivation in this case.

A similar situation is present in the current case. Indianola Chief Moffett had no personal involvement in the arrest or detention of Jackson. The City of Indianola cannot be held liable through a theory of Chief Moffett as policymaker. Finally, Officer Hagerman was a certified officer in the State of Mississippi at the time of the incident.[27] There is no training issue as outlined in detail below.

### 3. City Liability – No Identification of Unconstitutional Official Policy or Custom.

The Court must also consider whether the allegedly unconstitutional action constitutes a "custom or policy" of the city. The Fifth Circuit has identified two forms that "official policy" may take. First, a plaintiff may point to a policy statement formally announced by an official policymaker. See Webster v. Houston, 735 F.2d 838, 841 (5th Cir. Tex. 1984). Plaintiffs have not

---

[27]Exhibit J - Mississippi Law Enforcement Officers' Training Academy Certificate, 7/12/12.

identified any such policy or any such policymaker.

In the alternative, the plaintiff may demonstrate a "persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." Id. This is most often argued through the lens of inadequate training, as it is argued here.[28]

### a.    Inadequate Training - Excessive Force Claim

The Supreme Court has stated that "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011). Moreover, "'that a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city.'" Id. (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 390-391, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)). Proof of a single instance normally will not sustain a plaintiff's claim that a lack of training or supervision caused a violation of his constitutional rights. Cozzo v. Tangipahoa Parish Council, 279 F.3d 273, 286-87 (5th Cir. 2002) (citing Thompson, 245 F.3d at 459). Rather, a plaintiff generally must show a pattern of violations and that the inadequate training or supervision is "obvious and obviously likely to result in a constitutional violation." Estate of Davis, 406 F.3d at 381 (citations omitted).

The Fifth Circuit has held that when officers have received training as required by state law, the plaintiff must show that the legal minimum of training was inadequate. Benavides v. County of Wilson, 955 F.2d 968, 973 (5th Cir. 1992). Recently, Justice Southwick reaffirmed this principle in affirming summary judgment as to a failure to train theory stating: "the only training-related evidence in the record demonstrated that the City's training procedures complied with state law. We

---

[28]Exhibit H - Complaint at ¶24-25.

18

consider compliance with state requirements as a factor counseling against a 'failure to train' finding." Zarnow v. City of Wichita Falls Tex., 614 F.3d 161(5th Cir. 2010), certiorari denied by 2011 U.S. LEXIS 4991 (U.S., June 27, 2011). The Plaintiffs have not presented evidence that "the risk of injury to citizens was the obvious, highly predictable consequence of a lack of training." McIntosh, 690 F. Supp. 2d at 536 (internal quotations omitted). Scott Hagerman completed all state requirements of MELOTA and was a certified law enforcement officer on the date of the incident. As a matter of law, there is no training issue sufficient to go to a jury in this case.[29]

### b.    No Widespread Practice or Pattern Evidence Claim

Plaintiff must attempt to establish a widespread practice or pattern evidence claim which is violative of the constitution. Again, this claim fails.[30]

"[W]here [the] policy relied on is not itself unconstitutional, considerably more proof than the single incident is necessary in every case to establish both the requisite fault on part of the municipality and the causal connection between the "policy" and the constitutional deprivation." City of Oklahoma City v. Tuttle, 471 U.S. 808, 820 (1985).[31] Neither participation, written policies or deficient training are cognizable issues here. Campbell is left with having to argue that his

---

[29]Exhibit J - Mississippi Law Enforcement Officers' Training Academy Certificate, 7/12/12.

[30]Rios v. City of Del Rio, 444 F.3d 417, 427 (5th Cir. 2006) (stating that proof of deliberate indifference "generally requires" the plaintiff to demonstrate a pattern of violations); Estate of Davis ex rel. McCully v. City of N. Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005) (stating that a plaintiff "usually" must demonstrate a pattern of violations); Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force, 379 F.3d 293, 309 (5th Cir. 2004) (stating that deliberate indifference "generally requires" proof of a pattern of violations).

[31](Per Justice Rehnquist with the Chief Justice and two Justices concurring and three Justices concurring in judgment.).

injuries were directly caused by a "persistent, widespread practice" that is "so common and so well settled as to constitute a custom that fairly represents" City of Indianola Policy.[32]

The case of <u>Pineda v. City of Houston</u>, 291 F.3d 325, 329 (5th Cir. 2002) (cert denied), is often cited for the quote "one act is not itself a custom." The facts there are helpful here. Over 5,000 incident reports were produced in discovery in that case. These were narrowed down to 500 reports from the Narcotics Division. Experts further narrowed these down to claims that challenged aspects of searches without a warrant. Conflicting experts then argued over whether or not there was sufficient pattern evidence to demonstrate a custom. Each of the incidents discussed in <u>Pineda</u> included the officer's basis for the search (inventory, exigency, plain view). The district court was persuaded that these 11 (of 13) incidents for which there were offense reports in the summary judgment record were competent summary judgment evidence of a pattern of unconstitutional searches – enough to defeat summary judgment for want of proof of custom. The Fifth Circuit disagreed. The Fifth Circuit noted that each of the incidents offered "equivocal evidence of compliance with the Fourth Amendment." <u>Id</u>. The Fifth Circuit held that this proof did not create a material fact dispute on the issue of a pattern of conduct. <u>Id</u>. The Fifth Circuit noted that the practical effect of such evidence would be to leave the city with a burden of defending "cases within cases". <u>Id</u>.

<u>Pineda</u> clarified a second important premise of municipal liability that is completely lacking for Plaintiff here. Official capacity liability requires actual or constructive knowledge of the policymaker. This is in addition to pattern evidence. "A pattern may exist without actual or constructive knowledge because the facts of the events are concealed from the policymakers." <u>Id</u>.,

---

[32]See <u>Webster v. City of Houston</u>, 735 F.2d 838, 841 (5th Cir. 1984).

at 330. As noted above, each of the 11 incidents in Pineda included the officer's basis for the search. Id. First, the Fifth Circuit noted that the plaintiff's experts had improperly assumed that the policymakers had no right to believe in and rely upon the representations of their officers as to the existence of an exception to the warrant requirement. Id. At most, the actual documents in Pineda were facially neutral and showed compliance with the Fourth Amendment. Second, the documents themselves were insufficient as a matter of law to show constructive notice. Id. Constructive knowledge "may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity." Bennett v. City of Slidell, 728 F.2d 762, 768 (5th Cir. 1984).

There is a complete absence of any proof that Indianola had either actual or constructive notice of any institutional bad habits in this case. Ultimately, Connick v. Thompson, 131 S.Ct. 1350, 179 L.Ed.2d 417 (U.S. Mar. 29, 2011) dictates that a claim for official capacity liability will not lie under these facts.

## III. CONCLUSION

The claims of Plaintiffs Demetrius and Eugenia Campbell are properly dismissed as a matter of law. The doctrine of collateral estoppel is properly applied to prevent re-litigation in a federal venue. Demetrius's convictions of resisting arrest and failure to obey an officer bar his §1983 claims under Heck. Officer Hagerman is entitled to qualified immunity as there is no violation of the Fourth Amendment and Hagerman's actions were objectively reasonable. Eugenia's personal injury claim cannot move forward due to her intentional attempt to interfere with a lawful arrest and absence of any intentional wrongdoing on the part of Officer Hagerman. Plaintiffs fail to state a claim of policy,

21

training, or supervision issues which can proceed under <u>Monell.</u> This case is properly dismissed as a matter of law.

   **RESPECTFULLY SUBMITTED** this 25th day of September, 2014.

       **DEFENDANTS, CITY OF INDIANOLA, MAYOR STEVE ROSENTHAL, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, CHIEF RICHARD O'BANNON, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, and OFFICER SCOTT HAGERMAN, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY**

       **By: /s/ *Michael S. Carr***
        Daniel J. Griffith, MS Bar No. 8366
        Michael S. Carr, MS Bar No. 102138
        Attorneys for Defendants

Of Counsel:

**GRIFFITH & GRIFFITH**
123 South Court Street
P. O. Drawer 1680
Cleveland, MS 38732
Telephone: 662-843-6100
Facsimile: 662-843-8153
danny@griffithlaw.net

Gary Austin, Esq.
City Attorney
P.O. Box 1590
Indianola, MS 38751
887-5398
austingl@bellsouth.net

## <u>CERTIFICATE OF SERVICE</u>

I, Michael S. Carr, the undersigned counsel for Defendants, do hereby certify that on this day, I electronically filed the foregoing *Memorandum of Authorities in Support of Summary Judgment* with the Clerk of the Court using the ECF system which gave notification of such filing to the following counsel of record:

> Carlos E. Moore
> Tangala L. Hollis
> Moore Law Office
> 1155 S. Martin Luther King, Jr. Blvd.
> P.O. Box 1487
> Grenada, MS 38902
> Telephone: 662-227-9940
> Fax: 662-227-9941
> **Attorney for Plaintiff**

This the 25th day of September, 2014.

By: /s/ *Michael S. Carr*

Michael S. Carr